"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| RICHARD WAGATSUMA, | ) | Case No. CV 05-02529-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

**I.   Procedural and Factual History**

Plaintiff Richard Wagatsuma ("Plaintiff") seeks review of the Commissioner's final decision denying his application for Supplemental Security Income benefits ("SSI").  In accordance with the Court's Case Management Order, the parties have filed a joint stipulation ("JS") of disputed issues.  The matter is ready for decision.

Plaintiff applied for SSI on November 26, 2002. (AR at 275-78). He alleged disability beginning March 7, 2002, due to mental retardation, back and shoulder pain, and allergies.  (AR at 14). The claim was denied initially and on reconsideration, and Plaintiff timely

filed a request for a hearing. A hearing was held on February 26, 2004, before Administrative Law Judge ("ALJ") David Agatstein.

Plaintiff is 45 years old. He is a high school graduate and has work experience as an airplane cleaner, auto detailer, tire changer and fast food cook. (AR at 21). Plaintiff testified that he could not work because he dislocated his back and has pain in both shoulders. (AR at 31). He testified that he has difficulty counting money, has had double vision since a child and cannot operate a car. He once had a driver's license but had too many accidents and stopped driving. (AR at 41). He has never used a computer. (AR at 41).

Plaintiff's sister testified that he had difficulty in school and there was discussion by the teachers of putting him in special education classes. Testing in the fourth grade indicated that he could not compete with other students. Plaintiff's sister further testified that she and her husband have Plaintiff do little jobs in the apartment building they manage, but that Plaintiff "gets his information incorrect," and gets confused easily. (AR at 47-48). She also testified that he does not always realize what he cannot do. (AR at 68).

Plaintiff did not present records from any treating physicians. A consultative evaluation on April 16, 2002 by H. Harlab Bleecker, M.D., diagnosed impingement syndrome right shoulder and chronic low back pain. Consultative examiner Frederick A. Workman diagnosed mild thoracolumbar scoliosis with probable facet arthritis of the lumbar spine. (AR at 251-56).

A consultative psychological examination by Roger A Izzi, Ph.D., dated February 24, 2003, showed a Verbal I.Q. score of 65, Performance I.Q. 64 and Full Scale score of 62. Plaintiff's fund of information, and word knowledge were in the extremely low range. Plaintiff's ability

2

for abstract thought, concentration, freedom from distractibility, social judgment and reasoning were also within the extremely low range. (AR at 215-18). However, Dr. Izzi determined that these test results were not valid because they were "not consistent with the Plaintiff's reported educational and occupational history." (AR at 218).

A psychological evaluation for the Department of Rehabilitation performed in September, 2003, by Roger S. Pagel, Ph.D., showed that Plaintiff would have considerable difficulty completing formal education such as college, and needed vocational planning and guidance. The Beck Depression Inventory indicated moderate depression. Dr. Pagel diagnosed a "DR Code 632 Specific Learning Disability" (reading, spelling) and Adjustment Disorder with mixed features. Of the learning disability, Dr. Pagel noted, "[T]his could affect [Plaintiff's] ability to complete job-related applications and other written work as required by employers. This could also affect his employability as well as self-esteem and self-confidence." (AR at 269).

Dona Chan, M.D., reported to the Department of Rehabilitation on September 4, 2003, that Plaintiff had arthritis affecting both shoulders and the lumbar spine with morning stiffness, and difficulty with prolonged weight bearing, heavy lifting, bending, kneeling, pushing, pulling and over the shoulder work. (AR at 271). The diagnostic impression was Chronic Arthritis and Mental Retardation, Mild. (AR at 273). Dr. Chan recommended "non-stressful, light, entry-level jobs." (AR at 273).

On May 5, 2003, Larry E. Gaines, Ph.D., performed a psychological examination on Plaintiff. The Wechsler Adult Intelligence Scale-III test showed functioning within the mild range of mental retardation with a Verbal I.Q. of 62, a Performance I.Q. of 64 and a Full Scale I.Q. of

60. (AR at 246-250). However, Dr. Gaines downplayed these scores by noting, "Although Richard's test scores suggest learning abilities in the Mild Range of Mental Retardation, actual achievement indicate that he has achieved in the borderline to low-average range of performance. Richard's adaptive functioning with regard to self-help, domestic and community involvement, is suggestive of borderline levels of ability." (AR at 248-49).

On April 22, 2004, ALJ Agatstein issued an unfavorable decision, finding Plaintiff still capable of performing his past work as a fast food cashier and fast food restaurant cleaner. (AR at 21). The ALJ found that Plaintiff's subjective symptoms and complaints were disproportionate to the objective medical evidence. (AR at 19). The ALJ discredited Plaintiff's testimony due to his failure to seek appropriate treatment for the level of shoulder and back pain alleged. (AR at 20). With respect to the mental impairments, the ALJ found no evidence that the Plaintiff is unable to perform basic work activities due to his mental condition. (AR at 20).

Although the ALJ found that Plaintiff's low back pain, bilateral shoulder pain, and borderline intellectual functioning were all "severe" impairments within the meaning of 20 CFR § 404.1520(c), the ALJ found that none of these impairments prevented Plaintiff from performing any of his past relevant work. (AR at 22-23). The ALJ rested his decision in part on the testimony of a Vocational Expert ("VE") who testified that a person with the same age, educational and work history of the Plaintiff, as well as the same limitations,[1] would be able to perform the

---

[1] The ALJ found that Plaintiff was able to lift and/or carry 25 pounds occasionally and 10 pounds frequently, can perform no more that simple repetitive tasks, must avoid constant work above the shoulder

work of a fast food cashier and fast food cleaner.

Plaintiff contends that the ALJ's decision was erroneous in that he: (1) determined that Plaintiff does not meet or equal the Listing of Impairments; (2) found that the Plaintiff retained the residual function capacity for a significant range of light work; (3) determined that Plaintiff could perform his past relevant work; (4) determined that Plaintiff was not credible as to his symptoms and limitations; and (5) failed to consider the testimony of Plaintiff's sister. The Commissioner disagrees. (JS at 8-9).

After reviewing the parties' respective contentions and the record as a whole, the Court finds Plaintiff's contentions to be without merit.

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the

---

level but can perform it frequently, cannot reach with the right upper extremity above the level of the shoulder joint, and must avoid climbing, balancing, unprotected heights, driving and dangerous machinery. (AR at 21). The ALJ asked the VE to consider a hypothetical person with these limitations.

reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-21.

**III. Discussion and Analysis**

**A. Substantial Evidence Supports The ALJ's Finding That Plaintiff's Mental Impairment Does Not Meet Or Equal Any of the Listings.**

Plaintiff contends that his mental impairment meets or equals Listing 12.05(c) for mental retardation. A claimant meets Listing 12.05(c) when the following are shown: (1) a valid I.Q. score of 60 through 70; and (2) a physical or other mental impairment imposing additional and significant work-related limitation of function. Plaintiff asserts that he tested in the mentally retarded range with several psychologists, and thus meets the first requirement of 12.05(c). Plaintiff claims the second prong of 12.05(c) is met by his shoulder and back impairments. (JS at 10-13). Plaintiff strenuously objects to the conclusions by the psychologists that invalidated his I.Q. scores because of his educational and vocational history. (JS at 12-14).

The Court finds that substantial evidence supports the ALJ's finding that Plaintiff does not meet or equal the listing for mental retardation. Numerous medical sources examined the Plaintiff and concluded that he was not mentally retarded. For example, as noted previously, Dr. Izzi examined the Plaintiff and determined that despite IQ scores in the 60s, Plaintiff was not mentally retarded. (AR at 217,

220). Dr. Izzi concluded that the I.Q. scores were not valid because they were not consistent with Plaintiff's educational and occupational history. (AR at 218). Similarly, despite Plaintiff's I.Q. scores, Dr. Gaines examined Plaintiff and diagnosed Plaintiff's mental impairment as "borderline intellectual functioning," not mental retardation, because Plaintiff's "actual achievement" demonstrated a higher intellectual capacity. (AR at 248-49). Furthermore, consultative examiner Dr. Pagel also failed to find mental retardation, instead diagnosing a learning disability and asserting that Plaintiff was "ready for vocational planning." (AR at 270). Dr. Chan was the only physician to diagnose Plaintiff with mild mental retardation, although she performed no mental testing on the Plaintiff and concluded that he could do full-time, light, entry-level work. (AR at 271).

Plaintiff asserts that the first prong of Listing 12.05(c) is met because multiple I.Q. testing placed him in the range of 60 through 70. However, Listing 12.05(c) requires a "*valid* I.Q. score of 60 through 70," and thus the issue is whether the ALJ had sufficient evidence to decide that the scores were invalid. (emphasis added). The Court finds that the evidence supports the ALJ's decision. Plaintiff launches several arguments for why the physicians cited above were unjustified in invalidating Plaintiff's I.Q. scores.[2] Predominantly, Plaintiff argues that the physicians lacked detailed information about Plaintiff's

---

[2] For example, Plaintiff argues that Dr. Izzi's testing contains no data supporting the invalidity of the testing. Plaintiff complains that Dr. Izzi lacked the benefit of hearing the Plaintiff's sister's testimony about Plaintiff's lifelong problems with learning. Plaintiff further complains that Dr. Izzi lacked the records of Dr. Pagel, demonstrating Plaintiff's achievement tests revealed a 7th grade ability in math and reading. Finally, Plaintiff complains that Dr. Izzi lacked Plaintiff's earnings records showing earnings only between $350 and $1300 per month since 1985. (JS at 12-13)

7

educational and occupational history that might have undermined their assessment that these past accomplishments by Plaintiff reveal greater intellectual ability. However, neither the Court, nor the ALJ, are doctors, and both therefore lack the expertise to assess what impact each of these missing pieces of information about the Plaintiff would have had on the physician's diagnosis. The record shows that both Dr. Izzi and Dr. Pagel, the physicians that administered I.Q tests and later invalidated the scores, thoroughly examined, tested and interviewed Plaintiff, and concluded that he was not mentally retarded. No more is needed to satisfy the requirement of substantial evidence in support of the ALJ's decision.

**B. The ALJ Properly Assessed Plaintiff's RFC.**

Plaintiff asserts that the ALJ improperly assessed Plaintiff's RFC by failing to consider Plaintiff's ability to sustain work activity. Specifically, Plaintiff states that the ALJ "failed to properly consider whether Plaintiff could perform work on a sustained basis because of his combination of mental and physical limitations and whether he could actually maintain competitive employment as required." (JS at 25).

Plaintiff points to the requirements of Social Security Ruling ("SSR") 96-8p, "Assessing Residual Functional Capacity in Initial Claim," to argue that in making his RFC determination, the ALJ did not appropriately consider Plaintiff's sister's testimony that Plaintiff had recurrent pain and needed reminders for his self care and apartment maintenance. (JS at 25-26).

Social Security regulations define residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c). Pursuant to SSR 96-8p, the

RFC assessment must be based on all of the relevant evidence in the case record, including lay evidence. *See also Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998) (In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's 'ability to work on a sustained basis.'").

The Court finds that the ALJ properly determined Plaintiff's RFC in finding that he could perform light, unskilled work. No physician found that the Plaintiff was unable to perform light work. As the ALJ noted (AR at 16), Dr. H. Harlan Bleecker concluded that Plaintiff could perform light work, following his examination of the Plaintiff. (AR at 196-97). Dr. Chan similarly concluded that Plaintiff had the physical capacity to perform light work. (AR at 273). Dr. Gaines reported that Plaintiff's sister acknowledged "that he is able to do the simple, everyday, repetitive-type tasks." Dr. Gaines opined that Plaintiff would benefit from participation in a work training, placement and supervision program. (AR at 246-49). In his opinion, the ALJ considered the medical evidence and lay testimony, specifically noting that he weighed the testimony of Plaintiff's sister. (AR at 21). In light of the above, the ALJ's RFC is based on substantial evidence and the Court finds no error.

**C.   The ALJ Properly Concluded Plaintiff Could Perform His Past, Relevant Work**

Plaintiff asserts that the ALJ erroneously determined that Plaintiff could return to his past work as a fast food cashier and fast food restaurant cleaner. Plaintiff primarily rests this assertion on the premise that he meets Listing 12.05(c) for mental retardation and thus must be found disabled without consideration of his age, education, and work experience. However, because the Court does not agree that

Plaintiff meets listing 12.05(c), as discussed above, this argument is without merit.

Additionally, Plaintiff argues that records show Plaintiff had low monthly earnings (between $200 and $1300) since 1985, that he had not engaged in substantial gainful activity ("SGA") since 1995, that his housecleaning work was "basically part-time" and that more generally, the "ALJ failed to investigate fully the demands of Plaintiff's past work and compare them to Plaintiff's residual metal and physical capabilities." (JS at 33).

The Court finds that the ALJ's conclusion that Plaintiff could return to his past relevant work was supported by substantial evidence. The ALJ appropriately relied on the vocational expert's testimony that a hypothetical individual with the same age, education, work experience, and physical and mental limitations as the Plaintiff,[3] would be able to return to his past work in the fast food industry. Plaintiff's assertions that his low monthly earnings or part-time work discredit the finding that he could return to his past work are without merit. Although many of his past jobs may have been part-time, they constituted substantial gainful activity ("SGA") since Plaintiff's monthly earnings exceeded the monetary earnings threshold for SGA. *See* 20 C.F.R. §§ 404.1574 and 416.974. Although Plaintiff may have been unemployed or underemployed at times, this does not in itself demonstrate disability.

\\

---

[3] The ALJ found that Plaintiff was able to lift and/or carry 25 pounds occasionally and 10 pounds frequently, can perform no more that simple repetitive tasks, must avoid constant work above the shoulder level but can perform it frequently, cannot reach with the right upper extremity above the level of the shoulder joint, and must avoid climbing, balancing, unprotected heights, driving and dangerous machinery. (AR at 21).

**D. The ALJ Properly Considered Plaintiff's Testimony And Found That He Was Not Fully Credible.**

Plaintiff asserts that the ALJ did not properly consider his limitations because he inappropriately found Plaintiff to be not fully credible. Specifically, Plaintiff claims that the ALJ ought to have accepted Plaintiff's testimony that he could not work because he dislocated his back and because of pain in the shoulders. (JS at 36). Additionally, Plaintiff argues that the ALJ should have credited his testimony about mental limitations, including his difficulty counting money and the double vision he has had since childhood.

When deciding whether to accept the testimony of a claimant, the ALJ must perform a two-step analysis. At the first step, the claimant must produce objective medical evidence of one or more impairments, and show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)). The claimant is not required to produce objective medical evidence of the symptom itself or the severity of the symptom. *Id.* at 1282 (citing *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc)). At the second step of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of his symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings giving clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. *Id.* at 1284 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Plaintiff's medical records consistently show a diagnosis of mental

limitation (learning disability, borderline intellectual functioning, and mild mental retardation) and the ALJ found that Plaintiff suffers from the severe impairment of low back pain, bilateral shoulder pain, and borderline intellectual functioning. (AR at 22). Plaintiff has therefore satisfied step one of the credibility analysis.

At the second step, the ALJ assesses the credibility of the claimant's testimony about the severity of his symptoms. *Smolen*, 80 F.3d at 1284. The ALJ evaluated Plaintiff's testimony about his physical and mental limitations and found him not entirely credible. (AR at 21). Specifically, the ALJ found that the evidence establishes that the Plaintiff's subjective symptoms and complaints of pain are disproportionate to the objective medical evidence of record. (AR at 20). The ALJ noted that while Plaintiff complained of disabling pain in both shoulders and in his lower back for the past 16 years, the record establishes that the Plaintiff managed to successfully work with these symptoms until March 7, 2002, his alleged onset date. The ALJ also found that the Plaintiff's failure to seek appropriate treatment for these conditions reduced his credibility. Despite claiming pain for the past 16 years, Plaintiff did not seek treatment from an orthopedist or other physician and had only recently begun to see a chiropractor in November 2002. With respect to mental impairments, the ALJ noted that every doctor who evaluated Plaintiff's mental condition found that he could work at a the unskilled level or would benefit from vocational training. (AR at 20).

Therefore, the Court finds that the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony that his limitations entirely precluded him from being able to work.

\\

**E. The ALJ Properly Considered The Testimony Of Plaintiff's Sister**.

Plaintiff asserts that the ALJ's decision improperly omits any discussion of the Plaintiff's sister's testimony, or of the information Plaintiff's sister submitted to Social Security. Plaintiff asserts that this testimony and other evidence are important because they support the presence of a lifelong learning problem indicative of mental retardation, as well as physical restrictions that would prevent Plaintiff from being able to perform any job. Plaintiff asserts that the ALJ's failure to include this evidence in his decision is a serious omission and a breach of his duty to develop the record. (JS at 44).

A lay witness who can provide testimony about Plaintiff's symptoms and limitations. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate reasons include testimony unsupported by the medical record or other evidence and inconsistent testimony. *Lewis*, 236 F.3d at 512.

The Court finds that the ALJ properly considered the evidence from Plaintiff's sister. In the opinion, the ALJ noted, "[Plaintiff's] sister stated that the claimant has a mental handicap. He is slow in the ability to learn, both academically and vocational. She acknowledged that the claimant is able to do simple, everyday, repetitive-type tasks." (AR at 17). At the hearing, Plaintiff's sister testified that Plaintiff's pain prevented him from performing his past more strenuous work such as tire changing, but that she really wanted him to work. (AR at 45-46). She testified that Plaintiff does chores around the

apartment house managed by her husband. (AR at 47). In his opinion, the ALJ stated that in coming to his conclusion, he had "considered the testimony of the claimant's sister, Shirley Tatsuno." (AR at 21).

An ALJ is not required to discuss all evidence in detail. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). In this case, the ALJ did in fact consider and discuss the testimony by Plaintiff's sister and other evidence related to her. The medical and other evidence was inconsistent with her testimony and conclusions about Plaintiff's ability to work. There is no requirement that he address this evidence at great length. The Court finds that the ALJ adequately addressed the testimony of Plaintiff's sister.

**IV.  ORDER**

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner be affirmed and this case be dismissed with prejudice.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

Dated: February 22, 2006          ***/s/ Marc L. Goldman***

_____
Marc L. Goldman
United States Magistrate Judge

14